**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| GLEN M. WILLCOX, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | Civil Action No. 3:09-CV-1453-BF |
| § | | |
| COMMISSIONER OF THE SOCIAL § | | |
| SECURITY ADMINISTRATION, § | | |
| Defendant. § | | |

**MEMORANDUM OPINION AND ORDER**

This is a consent case before the undersigned United States Magistrate Judge for hearing, if necessary, and for recommendation. Before the Court are the **Plaintiff's Brief**, filed October 30, 2009; the **Defendant's Brief**, filed December 21, 2009; and the **Plaintiff's Reply Brief**, filed January 14, 2010. Having reviewed the evidence of the parties in connection with the pleadings, the Court finds that the final decision of the ALJ should be **AFFIRMED.**

**I. BACKGROUND**[1]

*A.    Procedural History*

This is a social security case. Plaintiff Glen Willcox ("Willcox") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner"), who denied his claim for disability benefits under Title II of the Social Security Act (the "Act"). Willcox filed his application for Title II disability benefits on May 28, 2002, claiming an onset date of September 11, 1996. (Tr. 40-42; 182.) Willcox claimed disability due to multiple sclerosis ("MS"). (Tr. 48.) After his application was denied both initially and upon reconsideration, Willcox filed a

---

[1] The following background facts come from the transcript of the administrative proceedings, which is designated as "Tr."

request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 19-20.) ALJ Herbert J. Green presided over Willcox's hearing on February 26, 2004. (Tr. 13; 18.) ALJ Green issued an unfavorable decision on March 18, 2004, after concluding Willcox could perform jobs other than his past relevant work. (Tr. 13; 17-18.) On June 10, 2005, the Appeals Council denied Willcox's request for review, thereby rendering the ALJ's unfavorable decision the final decision of the Commissioner. (Tr. 3-5.)

Willcox filed suit in the Northern District of Texas. (Tr. 182.) On March 7, 2006, at the direction of the U.S. District Court for the Northern District of Texas, the Appeals Council remanded the case to the ALJ for further proceedings with instruction to give further consideration to the opinion of Willcox's treating physician, Dr. Jonathan Walker ("Dr. Walker") and, if necessary, to contact Dr. Walker to clarify Willcox's impairment. (*Id.*)

On April 24, 2007, ALJ Green issued a second denial of Willcox's disability benefits after following the Appeals Council's instructions on remand. (Tr. 256-66.) Willcox filed an exception to the second denial on September 7, 2008. (Tr. 284-306.) On December 8, 2007, the Appeals Council remanded the case a second time to ALJ Frederick Gatzke. (Tr. 275-76; 347.) On July 10, 2008, ALJ Gatzke held a hearing and, on December 3, 2008, issued a decision finding that Willcox could have performed a significant number of jobs in the national economy through his last date insured, March 31, 2001. (Tr. 182-93.) Willcox appealed the ALJ's third denial of benefits to the Appeals Council. (Tr. 141-43.) The Appeals Council denied Willcox's request for review on June 17, 2009, thereby rendering the ALJ's unfavorable decision the final decision of the Commissioner. (*Id.*) Willcox filed the instant suit in the U.S. District Court for the Northern District of Texas, Dallas Division on September 5, 2009.

The case is now before this Court. Willcox contends that: (1) the ALJ improperly rejected Willcox's treating physician's opinion without good cause and without applying the six regulatory criteria as required; (2) the ALJ improperly relied on the opinion of a physician that did not treat Willcox; and (3) the Appeals Council failed to consider new and material evidence submitted by Willcox. (P.'s Br. at 9, 17-18). The Commissioner counters that: (1) the ALJ properly considered the opinion of Willcox's treating physician and offered adequate reasons to reject these opinions; (2) the ALJ did not rely on the opinion of a physician that did not treat Willcox; and (3) the Appeals Council properly considered the new evidence submitted by Willcox. (D.'s Br. at 5; 13-14.)

### B. *Factual History*

1. <u>Plaintiff's Age, Education and Work Experience</u>

Willcox's date of birth is July 5, 1956. (Tr. 128.) He graduated from high school. (Tr. 128.) In his past relevant work, he was the business owner and operator of a industrial sewing machine business where he sold and serviced industrial sewing machines. (Tr. 129.)

2. <u>Plaintiff's Medical Evidence</u>

The Court will only discuss the medical evidence of record which is relevant to the issues raised by the parties. In his disability report, dated June 26, 2002, Willcox listed his disabling condition as MS. (Tr. 48.) As noted above, he claims a disability onset date of September 11, 1996. (*Id*.) On July 21, 1989, Dr. Pretorious ran tests and concluded that the test results were suggestive of MS. (Tr. 170.) Willcox then began to see his treating physician, Dr. Walker, in 1990. (Tr. 50.)

On December 29, 1998, Willcox's insurance carrier stated that Willcox's symptoms were from carpal tunnel syndrome and not MS. (Tr. 117.) On January 7, 1999, Dr. Walker wrote a letter to Willcox's insurance carrier to explain why he disagreed with their conclusion. (*Id*.) Dr. Walker

3

disagreed with the carpal tunnel assessment because: (1) Willcox had a MRI with white matter lesions; (2) different parts of his nervous system were affected; (3) he recovered from relapses of MS without treatment; and (4) he experienced extreme fatigue, intention tremor, and spasticity of the quadriceps. (*Id.*) Dr. Walker reported that these are all symptoms of MS. (*Id.*)

From 2000 to 2002, Willcox was treated by physicians at the Texas Department of Criminal Justice ("TDCJ"). (Tr. 129.) The only symptom of MS recorded in the prison medical records was on April 29, 2001, when Wilcox reported that MS was causing his hands to cramp. (Tr. 90.) This complaint was made after Willcox's Title II insured status expired on March 31, 2001. (Tr. 192.)

Upon release from prison, Dr. Walker resumed care of Willcox. (Tr. 113.) On February 21, 2002, Dr. Walker reported that Willcox was unable to work and had been on permanent disability since 1996. (Tr. 113.) On June 10, 2002, Dr. Walker indicated that Willcox has a Class 5 physical impairment with severe limitations of functional capacity. (Tr. 110.) Dr. Walker completed a Physician's Statement for Disability Homestead Exception for Tax Year 2002 on October 11, 2003 and stated that Willcox was never expected to return to work due to MS. (Tr. 246.) On February 19, 2004, Dr. Walker completed a residual functional capacity ("RFC") questionnaire reporting that Willcox was incapable of working a "low stress" job because attempts to work aggravated his MS symptoms. (Tr. 239.) On October 25, 2006, Dr. Walker completed a second RFC questionnaire stating Willcox was capable of working a "low stress" job. (Tr. 233.) On February 27, 2007, Dr. Walker completed a third RFC questionnaire stating that Willcox would never be able to return to work, even part time. (Tr. 249.)

In contrast, the state agency medical consultant ("SAMC"), who did not personally evaluate Willcox, stated that, due to the lack of medical evidence, it is difficult to determine if Willcox has

MS, if the MS has disabled him, and, if so, to what degree. (Tr. 335-42.)

       3. Plaintiff's Hearing

Willcox's hearing took place on March 7, 2007. (Tr. 327.) He was represented at the hearing by his attorney, Robert H. Todd. (Tr. 327.) As with the medical evidence, the Court will only relate those portions of the hearing which bear on the issues raised by the parties.

The Vocational Expert ("VE") testified that an individual with Willcox's reported disabilities could perform the jobs of surveillance system monitor and counter or sales attendant. (Tr. 343.) However, the VE stated that if Willcox had to lie down for four hours a day, he would not be able to perform work in the national economy. (Tr. 342.) Additionally, the VE explained that it would be difficult for an employee to maintain competitive employment if he was unable to maintain attention and concentration to perform simple tasks. (Tr. 343.) Finally, the VE stated that if an employee were to miss four days a month on a regular basis, he would be unable to maintain employment. (Tr. 343-44.)

    *C. ALJ's Findings*

The ALJ issued an unfavorable decision on December 3, 2008. (Tr. 182-93.) First, the ALJ found that Willcox met the disability insured requirements on September 11, 1996, the alleged date of onset, through March 31, 2001. (Tr. 183.) Second, he determined that Willcox had not engaged in substantial gainful activity since September 11, 1996. (Tr. 184.) Third, the ALJ determined that Willcox has the "severe impairment," as defined by the Act, of MS. (*Id*.) Fourth, the ALJ determined that, as of March 31, 2001, Willcox did not have an impairment that is listed in or is equal in severity to an impairment listed in Appendix I of the regulations. (*Id*.) Fifth, the ALJ determined that between September 11, 1996 and March 31, 2001, Willcox had the RFC to perform,

on a continuing and sustained basis, the exertional and nonexertional requirements of a full range of light work activity. (Tr. 191-92.) In making this determination, the ALJ found Willcox's testimony to be not credible due to many inconsistencies and a lack of support by objective medical evidence. (Tr. 191.) The ALJ also rejected Dr. Walker's opinions after determining that they were contradictory and inconsistent. (Tr. 184-189.) Sixth, the ALJ determined that between September 11, 1996 and March 31, 2001, Willcox was unable to perform his past relevant work as a sales person and an industrial sewing machine repairman. (Tr. 192.) Seventh, the ALJ found that Willcox was a younger individual between September 11, 1996 and March 31, 2001. (Tr. 192.) Additionally, the ALJ found that Willcox has a high school education and that transferability of skills was immaterial. (*Id*.) Eighth, the ALJ found that Willcox was not under a "disability," as defined in the Act, at anytime between September 11, 1996 and March 31, 2001. (Tr. 193.)

The Court now turns to the legal standards that will guide its analysis.

## **II. STANDARD OF REVIEW**

To be entitled to social security benefits, Willcox must prove that he is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work she has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove his disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. § 405(g) (West Supp. 1999). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to

support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather it scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

Having reviewed the applicable legal standards, the Court now turns to the merits of the case.

### III. ANALYSIS

As noted above, Willcox challenges the ALJ's unfavorable disability decision on the basis that: (1) the ALJ improperly rejected Willcox's treating physicians opinion without good cause and without applying the six regulatory criteria as required; (2) the ALJ improperly relied on the opinion of a physician that did not treat Willcox; and (3) the Appeals Council failed to consider new and material evidence submitted by Willcox. (P.'s Br. at 9; 17-18.) The Commissioner counters that: (1) the ALJ properly considered the opinions of Dr. Walker and offered adequate reasons to reject these opinions; (2) the ALJ did not rely on the opinion of a physician that did not treat Willcox; and (3) the Appeals Council properly considered the new evidence submitted by Willcox. (D.'s Br. at 5; 13-14.)

*A. Treating Physician's Opinions*

Willcox first alleges that the ALJ improperly rejected Dr. Walker's opinion without good cause and without applying the six regulatory criteria as required. (P.'s Br, at 9; 17-18.) The ALJ must evaluate: (i) the [l]ength of the treatment relationship and the frequency of examination; (ii) the [n]ature and extent of the treatment relationship; (iii) the supporting evidence presented by the physician; (iv) the level of consistency between the physician's opinion and the record; (v) the physician's specialization; and (vi) any other relevant factors. 20 C.F.R. § 404.1527(d)(2)-(6).

8

In the instant case, Dr. Walker, who specializes in neurology, saw Willcox approximately once a year since 1996, with a two year lapse while Willcox was incarcerated. (Tr. 232; 244-48.) In rejecting Dr. Walker's opinion, the ALJ looked to many factors, including the SAMC's opinion that there is a lack of medical evidence to conclude that Willcox is disabled, the lack of medical evidence presented by Dr. Walker, the inconsistencies in Dr. Walker's medical records, and the absence of MS symptoms reported in TDCJ. (Tr. 182-93.) While the ALJ may not have specifically addressed each of the factors in perfect narrative fashion, there was adequate consideration of the listed factors. *Falco v. Shalala*, 27 F3d 160, 163-64 (5th Cir. 1994).

The SAMC testified that the medical evidence and Dr. Walker's treatment notes are insufficient to conclude that Willcox is completed disabled. (Tr. 338.) Additionally, Dr. Walker's record is not supported by clinical findings, but rather Willcox's reported complaints. (Tr. 185-87.) Dr. Walker based his finding that Willcox was only capable of a low stress job on Willcox's own report. (Tr. 233.) Furthermore, Willcox's TDCJ medical record does not support that he is disabled. While incarcerated, he was reported as having normal gait, range of motion, and movement. Wilcox's TDCJ medical records make no mention of MS symptoms until April 19, 2001, after Willcox's insured status under Title II expired. (Tr. 77; 87; 90; 95; 98; 192.)

Finally, the RFC questionnaires filled out in February 2004, October 2006, and February 2007 are inconsistent with each other. On February 19, 2004, Dr. Walker reported Willcox was incapable of even a "low stress" job. On October 25, 2006, Dr. Walker reported that Willcox was capable of a "low stress" job. (Tr. 233.) Dr. Walker also reported that the earliest date the limitations applied to Willcox was 2004, which is three years after Willcox lost his insured status for Title II disability benefits. (Tr. 234.) On February 27, 2007, Dr. Walker reported Willcox was

9

incapable of even a "low stress" job, but Dr. Walker did not provide any reason for this conclusion. (Tr. 249.)

Due to the lack of clinical support, discrepancies between the reports, and reports of MS symptoms that cannot be considered because they were made after Willcox's last date insured, the ALJ properly rejected Dr. Walker's opinion with good cause. The Court finds that the ALJ's decision to reject Dr. Walker's medical opinions is supported by substantial evidence.

### B. Non-treating Physician's Opinions

Willcox also alleges that the ALJ improperly relied on a physician's opinion that did not treat or examine Willcox. (P.'s Br. 17-18.) The SAMC accepted that Willcox has MS but questioned Willcox's disability and the reasons he cannot work due to MS. (Tr. 341.) The ALJ does not rely on the SAMC's opinion but, rather, the lack of clinical evidence Dr. Walker provided to explain how Willcox is disabled. (Tr. 182-93.) The Court finds that the ALJ did not rely on a nontreating physician's opinions, and, as previously discussed, the ALJ's decision to reject Dr. Walker's medical opinions is supported by substantial evidence.

### C. Determination of the Appeals Council

Finally, Willcox alleges that the Appeals Council failed to consider the MRI when it reviewed his appeal. (P.'s Br. 18-19.) In a letter dated June 17, 2009, Administrative Appeals Judge A. George Lowe informed Willcox's attorney that the Appeals Committee would not assume jurisdiction over the denial of Willcox's benefits entered by the ALJ on December 3, 2008. (Tr. 141.) Judge Lowe explained that a newly submitted MRI, which exhibited findings compatible with MS dating back to 1986, had been received by the Appeals Committee. (Tr. 141.) However, Judge Lowe explained that the new evidence was not material and would not have changed the ALJ's

decision. (Tr. 141-42.) The Court finds that the Appeals Council's determination is supported by substantial evidence.

For new evidence to be material, there must be a reasonable possibility that the outcome would have been different had the evidence been before the Commissioner. *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994). The new evidence shows an MRI consistent with MS. However, the ALJ concluded, without evidence of the MRI, that MS was a serious impairment. (Tr. 184.) Furthermore, the ALJ included significant limitations in Willcox's RFC due to the MS. (Tr. 191.) The MRI does not include any additional discussion of limitations of clinical findings. Willcox worked several years after the MRI, and treatment of Willcox's MS through March 31, 2001 was minimal. Although the ALJ relied partly on the absence of the MRI as a basis for rejecting Dr. Walker's testimony, it was not his sole basis for doing so. Substantial evidence supports the Appeals Council's decision that the new evidence submitted was not material.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the decision of the Commissioner should be **AFFIRMED**.

SO ORDERED, March 2, 2011.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE